IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 1:19-CR-220 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **BARRY LEE HOLLAND,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Barry Lee Holland moves the court to suppress evidence obtained during the search of a residence made pursuant to a warrant. (Doc. 43). For the following reasons, we will deny Holland's motion.

**I.**  **Factual Background & Procedural History**[1]

On April 25, 2019, police searched the residential address of 269 Cumberland Street, Harrisburg, Pennsylvania. (Doc. 43 at 1 ¶ 6). The search was based on a warrant that was executed the same day seeking, *inter alia*, controlled substances, drug paraphernalia, cash, and firearms. (Id. at 1-2 ¶ 7; id. at 5-6). Pennsylvania State Police Trooper Shawn Panchik provided the affidavit of probable cause (id. at 7-15) in support of the April 25 warrant, (see id. at 7 ¶ 1; id. at 15). Trooper Panchik and another state trooper executed the search warrant and seized, among other items, marijuana, drug-trafficking paraphernalia, a handgun, and ammunition. (See id. at 16). Those items formed the basis of the instant charges.

---

[1] The following facts derive primarily from Holland's submissions in support of his motion to suppress evidence. (See generally Docs. 43, 44).

In July 2019, a federal grand jury returned a four-count indictment charging Holland with conspiracy to distribute and possess with intent to distribute marijuana, 21 U.S.C. § 846 (Count 1); possession with intent to distribute marijuana after sustaining a prior conviction for a serious drug felony, 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count 2); possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c) (Count 3); and possession of a firearm by a person not to possess, 18 U.S.C. § 922(g)(1) (Count 4).  (Doc. 1).  Holland pled not guilty and subsequently moved, through appointed counsel, to suppress the evidence recovered from 269 Cumberland Street.  (See Docs. 11, 43).  The motion is fully briefed and ripe for disposition.

## II.   Discussion

Holland challenges the search warrant on two separate bases.  He first contends that the April 25 warrant, on its face, is not supported by probable cause.  Holland alternatively argues that, even if the affidavit of probable cause provides sufficient information for issuance of a search warrant, that affidavit contains material misstatements and falsehoods that render the warrant void.[2]  Neither argument is persuasive.

---

[2] Holland also briefly challenges the propriety of the warrant because it was issued by a state magisterial district justice whose jurisdiction did not include the 269 Cumberland Street residence.  (See Doc. 44 at 18).  Holland cites Federal Rule of Criminal Procedure 41(b)(1) as reason to void the warrant, but this reliance is misplaced.  Rule 41(b) deals with venue concerns for *federal* warrant applications made by federal law enforcement officers or government attorneys, see FED. R. CIV. P. 41(b), and thus provides no basis to void the April 25 state warrant at issue in this case.

### A. Probable Cause for Search Warrant

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See U.S. CONST. amend. IV; Horton v. California, 496 U.S. 128, 133 (1990). When searching a home, the constitutional default is that a warrant is required. See Payton v. New York, 445 U.S. 573, 586 & n.25 (1980) (citations omitted). To issue a search warrant, a neutral magistrate must find that, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Courts reviewing such determinations do not make a *de novo* probable cause assessment; they "simply [] ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." United States v. Miknevich, 638 F.3d 178, 182 (3d Cir. 2011) (second alteration in original) (quoting Gates, 462 U.S. at 238-39).

Probable cause is an amorphous concept. Ornelas v. United States, 517 U.S. 690, 695-96 (1996). It is "not readily, or even usefully, reduced to a neat set of legal rules." Id. (quoting Gates, 462 U.S. at 232). Its existence must be determined from the view of the officer on the street, not the judge in the courtroom. United States v. Sokolow, 490 U.S. 1, 7-8 (1989); see also United States v. Cortez, 449 U.S. 411, 418 (1981). Whether probable cause exists is an *objective* determination based on the totality of the circumstances present at the time of the challenged governmental conduct. See United States v. Williams, 413 F.3d 347, 353 n.6 (3d Cir. 2005). Probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014).

We begin by setting forth, in summarized fashion, the pertinent portions of the lengthy and detailed April 25 affidavit of probable cause, as both of Holland's challenges rely on its contents. In that affidavit, Trooper Panchik avers as follows:

- Trooper Panchik had extensive experience with drug investigations and arrests, as well as specialized education and training in the fields of drug trafficking and enforcement. (Doc. 43, Ex. D-1 ¶¶ 2-4, 6).

- Trooper Panchik had significant experience working with cooperating defendants and confidential informants in investigating and prosecuting drug-trafficking conspiracies. (Id. ¶ 5).

- On January 4, 2018, Trooper Panchik received a phone call from a cooperating defendant who stated that Holland was distributing cocaine in large quantities around the Harrisburg area and storing narcotics at a female associate's apartment. The cooperating defendant also indicated that Holland was having narcotics shipped to him from outside of Harrisburg, specifically from the West Coast. (Id. ¶ 7).

- On the same day, Trooper Panchik contacted a reliable confidential informant ("CI")—who had provided "valid information" in the past that had led to numerous felony arrests and prosecutions—and asked the CI about the information recently received from the cooperating defendant. The CI informed Trooper Panchik that they were familiar with Holland and that the information about Holland's distribution of narcotics and marijuana in Harrisburg was accurate. The CI also provided information regarding Holland's prior federal drug-trafficking and firearm convictions and frequent use of rental vehicles. (Id. ¶ 8).

- Trooper Panchik performed a criminal history check and confirmed the CI's information regarding Holland's prior federal conviction for cocaine distribution and a firearm offense. Trooper Panchik also discovered several other drug-trafficking convictions incurred by Holland as a minor and as an adult. (Id. ¶ 9).

- On April 18, 2018, Trooper Panchik received a call from United States Probation Officer John Johnson, who was supervising Holland after his release from prison for the prior federal offenses. Officer Johnson indicated that he had also heard from multiple sources in the Harrisburg area that Holland was distributing narcotics. According to Officer Johnson, Holland was using his mother's residence as his address while

4

- on supervised release, but every time Officer Johnson performed a home visit Holland was not present. (Id. ¶ 11).

- On April 25, 2018, an anonymous tip to "Crime Stoppers" related that Holland was "distributing large amounts of narcotics in the Harrisburg area" that he obtained from other states. The tip also related that Holland drove rental cars "all the time" and was using Tierra Taylor to assist with drug distribution. According to the tipster, Holland stored narcotics with Brandi[e] Black at the Cumberland Court apartments. (Id. ¶ 12).

- Following receipt of information from a reliable confidential informant about the rental car Holland was currently driving, a state trooper conducted a traffic stop of a vehicle matching the description and partial license-plate number on April 26, 2018, eastbound on the Pennsylvania Turnpike. The driver was identified as Holland, who claimed that he was driving the rental car to King of Prussia Mall to go shopping for a baby shower. After the stop, different plainclothes officers followed Holland, who continued east on the Turnpike to the "Reading Interchange," where he turned around and headed west, back toward Harrisburg. Holland was then seen entering 269 Cumberland Street, exiting the residence a short time later, and then parking his vehicle down the street. (Id. ¶¶ 15-16).

- This information was relayed to Detective Ishman from Harrisburg City Vice, who was also surveilling Holland. Detective Ishman stated that he had obtained information that Holland used a "trail car" or "lead car" when traveling to obtain narcotics. Detective Ishman had heard that Taylor, one of Holland's girlfriends, drove the trail car for him, and that Black, another girlfriend, lived at 504 Cumberland Court Apartments. (Id. ¶ 17).

- As part of the investigation, information obtained from Enterprise Rent-A-Car indicated that Holland had rented 17 different vehicles between January 2018 and April 2018. (Id. ¶ 18).

- On June 25, 2018, Officer Johnson communicated to Trooper Panchik that an ex-girlfriend of Holland had informed Officer Johnson that Holland had traveled to New York in a dark Range Rover. The same ex-girlfriend also verified that Holland was residing at 269 Cumberland Street and had been living there for "the last year." (Id. ¶ 19).

- On July 13, 2018, Trooper Panchik was conducting surveillance on 269 Cumberland Street and observed the vehicle of a known cocaine and marijuana trafficker parked in front of the residence. (Id. ¶ 20).

- On November 13, 2018, Officer Johnson relayed to Trooper Panchik that he had been contacted by a female who reported that Holland had been selling marijuana for the past year in the Harrisburg area. (Id. ¶ 21).

- On November 19, 2018, Holland was stopped by a different state trooper and found to be in possession of a small amount of marijuana. (Id. ¶ 22).

- On March 8, 2019, Black reported to Trooper Panchik that Holland utilizes 269 Cumberland Street as a stash location for marijuana and uses another female associate's residence to keep firearms. Black also reported that Holland drives a Range Rover and Lexus. Trooper Panchik averred that, as noted earlier in the affidavit, previous information from cooperators indicated that Black was storing narcotics at her residence for Holland as she was his girlfriend. Accordingly, Trooper Panchik believed that Black "would be privileged to this information as she has kept items for Holland in the past." (Id. ¶ 23).

- On March 21, 2019, Trooper Panchik was provided a "Drug tip" from the "tip line" reporting that Holland had access to 269 Cumberland Street, was selling drugs to the tipster's sister, and had been asked numerous times to stop based on overdose concerns. The tipster related that Holland was selling heroin and crack cocaine and was using the caller's sister as a drug runner to move drugs from Harrisburg to Philadelphia in a green Range Rover. The tipster reported that they knew "for a fact" that Holland was staying at 269 Cumberland Street, as they had picked up their sister at this address that same week and had observed Holland at the residence with drugs and money. The caller also provided a Facebook page for Holland, which included a picture of Holland at a restaurant across the street from 269 Cumberland Street with the caption "Every time the pack get gone I get another load." Based on Trooper Panchik's training and experience, a "pack" is used in drug culture to refer to a pound of marijuana. (Id. ¶ 24).

- Trooper Panchik reviewed "open source intelligence information" indicating that Holland was associated with 269 Cumberland Street. (Id. ¶ 25).

- On April 25, 2019, two inbound parcels addressed to two Harrisburg addresses were seized and searched pursuant to a warrant. The parcels contained 19 pounds of marijuana and had been shipped from California. A controlled delivery operation was conducted for the parcel directed to 1810 Briggs Street. A male retrieved the package and took it into the residence, and law enforcement agents—acting on an anticipatory warrant—entered the residence. "At this time a cooperating defendant

6

related that they could contact the person to who the parcel was destined for.  A phone call was made to" Holland, who requested that the cooperating defendant check on the other parcel.  Holland instructed the cooperating defendant to place the box on the rear porch as he would come to retrieve it.  Approximately 10 minutes later, Holland arrived and took possession of the parcel on the back porch, at which time he was taken into custody.  (Id. ¶ 26).

- While speaking with authorities, "the cooperating defendant . . . related that Holland was a friend and [that] they were just at his residence of 269 Cumberland St on April 23, 2019[.]  They related that Holland lived at 269 Cumberland St Harrisburg as the cooperator is intimate with HOLLAND and this was confirmed with photographs and videos within the phone.  The cooperator related that they have received numerous packages for Holland in the past and know him to be a marijuana trafficker."  (Id. ¶ 27).

- Trooper Panchik averred that, due to his experience and training, he knew that sophisticated drug traffickers utilize various addresses to elude detection and will not keep illicit items at a location known to police.  He further averred that it is common for traffickers to ship packages to other people known as "mules," who then contact the trafficker if there has been no police activity and the parcel is "safe for pickup."  He believed Holland was a "sophisticated narcotics trafficker" who showed common signs of these activities meant to elude law enforcement, including using his mother's address as his residence for supervised release while also maintaining a different residence for storing contraband.  (Id. ¶ 28).

- The nature of the drug-trafficking operation being investigated was similar to other organizations Trooper Panchik had investigated.  Trooper Panchik requested "a search warrant to be issued for the residence of 269 Cumberland Street as it is believed to be a stash location" for Holland as confirmed by the information contained in the affidavit.  (Id. ¶ 34).

Holland raises multiple arguments for why the instant affidavit of probable cause is deficient.  He contends that the warrant contained "stale information" and that "more than one year elapsed between the cooperating defendant supplying Trooper Panchik with [] information that Holland was allegedly distributing drugs" and application for the search warrant.  (Doc. 44 at 2, 3).  He also challenges the

7

reliability of the information provided by the cooperating defendant, confidential informant, and anonymous tipsters.  (Id. at 4-5).

The universal problem with these arguments is that they fail to acknowledge that probable cause is a totality-of-the-circumstances assessment, which includes, *but is not limited to*, "the veracity and basis of knowledge of persons supplying hearsay information."  See Gates, 462 U.S. at 238 (internal quotation marks omitted).  It is true that the first tip came in over a year before the search of 269 Cumberland Street.  It is likewise true that, for some information provided by cooperating sources, there is no mention of the reliability of the cooperator's or the anonymous tipster's information.  But Holland's piecemeal approach ignores the fact that the reliability of the various informants' statements—and the concomitant existence of probable cause—is compounded with each tip, statement, and relevant investigatory discovery confirming that Holland was trafficking marijuana.  We count no fewer than *nine* instances where information was provided to Trooper Panchik, either directly or indirectly, that Holland was involved in drug-trafficking activities in Harrisburg.  On these statements alone a neutral magistrate could reasonably determine that probable cause existed to search a residence connected to Holland and believed to contain drug-trafficking contraband.  See United States v. Stearn, 597 F.3d 540, 558-59 (3d Cir. 2010) (explaining that, for drug-trafficking crimes, "a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there").

This brings us to Holland's next argument: that there is an inadequate "nexus" between the alleged crimes and the 269 Cumberland Street residence.

(See Doc. 44 at 6-7). Again, this assertion is clearly rebutted by the affidavit of probable cause. Holland was connected to the 269 Cumberland Street address by direct police observation, (Doc. 43, Ex. D-1 ¶ 16), through information received by his probation officer, (id. ¶ 19), by direct information from Black, (id. ¶ 23), by a tip from the sibling of one of Holland's alleged buyers, (id. ¶ 24), through open-source intelligence information, (id. ¶ 25), and by a cooperating defendant, (id. ¶ 27). This substantial evidence of Holland's association with 269 Cumberland Street, when coupled with (1) the inference of evasion of police detection by providing his mother's residence as his supervised-release address but not being present for home inspections, (2) existence of probable cause that Holland was trafficking drugs, and (3) multiple tips that drug-dealing activities were taking place at that address, is more than sufficient to provide a nexus between the alleged crimes and 269 Cumberland Street. See Stearn, 597 F.3d at 559-60. Even if we were to remove the challenged portions of the affidavit, as discussed *infra*, our conclusion on this point would not change.

In sum, there is simply no merit whatsoever to Holland's claim that Trooper Panchik's affidavit, on its face, fails to supply probable cause to search 269 Cumberland Street. The detailed and thorough affidavit leaves no doubt that "the magistrate had a substantial basis for . . . concluding that probable cause existed." Miknevich, 638 F.3d at 182 (alteration in original) (quoting Gates, 462 U.S. at 238-39).

### B. Alleged Falsehoods in Affidavit of Probable Cause

Holland alternatively asserts that portions of the affidavit contain intentional misrepresentations and falsehoods, which, if removed, result in an affidavit lacking probable cause for a search warrant. The government responds that a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), is needed to determine the veracity of the challenged statements. We disagree on both accounts. Even assuming the portions of the affidavit objected to by Holland are false, they are immaterial to a finding of probable cause.

A criminal defendant may challenge the truthfulness of factual statements in an affidavit of probable cause through what is commonly referred to as a Franks hearing. See generally Franks, 438 U.S. 154. When a defendant makes "a substantial preliminary showing" that the affidavit in question contains a false statement which was both knowingly or recklessly made *and material* to the finding of probable cause, the court must conduct an evidentiary hearing to examine the sufficiency of the affidavit. United States v. Aviles, 938 F.3d 503, 508 (3d Cir. 2019) (citing Franks, 438 U.S. at 155-56). However, if the information challenged by the defendant is immaterial—that is, unnecessary to the finding of probable cause—no hearing is required. See id. at 508-09. When examining the materiality of alleged falsehoods or omissions, courts "must perform a word-by-word reconstruction of the affidavit" to determine whether the reconstructed affidavit would establish probable cause. See Dempsey v. Bucknell Univ., 834 F.3d 457, 470 (3d Cir. 2016).

To support his claim, Holland provides signed statements from Brandie Black, Tiara Jackson, and Dennis Jones, as well as a private investigator's

10

memorandum from his interview with Tierra Taylor.  (See Doc. 43, Ex. D-3).  Based on these statements, Holland challenges the veracity of paragraphs 12, 17, 19, 23, 26, and 27 of the affidavit of probable cause.  All of these paragraphs are summarized *supra*, and we take Holland's challenges in turn.

Paragraph 12 concerns a "Crime Stoppers" tip regarding Holland distributing narcotics in the Harrisburg area, obtaining those drugs from out of state, driving rental cars, using Taylor to assist with drug distribution, and storing narcotics at Black's apartment.  In Black's statement, she admits only to calling Holland's probation officer in June 2018 and informing him that Holland was in New York with his girlfriend and driving a Range Rover.  In Taylor's interview, she denied any involvement with drug distribution or driving as a "trail" or "lead" car for Holland.  Even under a reading most favorable to Holland, these proffers only contradict the final two assertions in paragraph 12, leaving the rest of the paragraph unchanged.

The same result obtains for paragraph 17.  That paragraph includes information from Detective Ishman that Holland used a trail car or lead car when traveling to procure narcotics, that Detective Ishman heard that Taylor drove the trail car, and that Black was Holland's girlfriend and lived at 504 Cumberland Court Apartments.  The only portion of this paragraph called into question is that Taylor drove the trail car, so the other statements remain intact.

In paragraph 19, because Black's statement asserts that she only told Officer Johnson about Holland traveling to New York in a Range Rover, the portions regarding Holland's address, phone number, and new girlfriend must be excised.

11

As to paragraph 23, because Black stated that she did not speak to Trooper Panchik (or anyone else) after her initial discussion with Officer Johnson in June 2018, the entire paragraph must be removed.

Holland also challenges paragraphs 26 and 27. In these paragraphs, there is a discussion regarding a "cooperating defendant" who was involved with the controlled delivery at 1810 Briggs Street which led to Holland's arrest. We presume that Jones or Jackson was the cooperating defendant mentioned in these paragraphs because Holland asserts that, based on Jones' and Jackson's statements, paragraphs 26 and 27 are false. (See Doc. 44 at 12-13). Unless Jones or Jackson was the referenced cooperator, their statements would not contradict any material portion of paragraphs 26 and 27. Thus, we assume *arguendo* that parts of paragraph 26 related to the cooperating defendant's actions and statements, as well as all of paragraph 27, must be excised.

Even after performing the above-catalogued "reconstructive surgery," Dempsey, 834 F.3d at 470 (citation omitted), we remain convinced that the revised affidavit would support a finding of probable cause to search 269 Cumberland Street. We set forth the reconstructed affidavit with the challenged portions stricken:

- Trooper Panchik had extensive experience with drug investigations and arrests, as well as specialized education and training in the fields of drug trafficking and enforcement. (Doc. 43, Ex. D-1 ¶¶ 2-4, 6).

- Trooper Panchik had significant experience working with cooperating defendants and confidential informants in investigating and prosecuting drug-trafficking conspiracies. (Id. ¶ 5).

- On January 4, 2018, Trooper Panchik received a phone call from a cooperating defendant, who stated that Holland was distributing cocaine in large quantities around the Harrisburg area and storing narcotics at a female associate's apartment. The cooperating defendant also indicated that Holland was having narcotics shipped to him from outside of Harrisburg, specifically from the West Coast. (Id. ¶ 7).

- On the same day, Trooper Panchik contacted a reliable confidential informant ("CI")—who had provided "valid information" in the past that had led to numerous felony arrests and prosecutions—and asked the CI about the information recently received from the cooperating defendant. The CI informed Trooper Panchik that they were familiar with Holland and that the information about Holland's distribution of narcotics and marijuana in Harrisburg was accurate. The CI also provided information regarding Holland's prior federal drug-trafficking and firearm convictions and frequent use of rental vehicles. (Id. ¶ 8).

- Trooper Panchik performed a criminal history check and confirmed the CI's information regarding Holland's prior federal conviction for cocaine distribution and a firearm offense. Trooper Panchik also discovered several other drug-trafficking convictions incurred by Holland as a minor and as an adult. (Id. ¶ 9).

- On April 18, 2018, Trooper Panchik received a call from United States Probation Officer John Johnson, who was supervising Holland after his release from prison for the prior federal offenses. Officer Johnson indicated that he had also heard from multiple sources in the Harrisburg area that Holland was distributing narcotics. According to Officer Johnson, Holland was using his mother's residence as his address while on supervised release, but every time Officer Johnson performed a home visit Holland was not present. (Id. ¶ 11).

- On April 25, 2018, an anonymous tip to "Crime Stoppers" related that Holland was "distributing large amounts of narcotics in the Harrisburg area" that he obtained from other states. The tip also related that Holland drove rental cars "all the time" ~~and was using Tierra Taylor to assist with drug distribution. According to the tipster, Holland stored narcotics with Brandi[e] Black at the Cumberland Court apartments~~. (Id. ¶ 12).

- Following receipt of information from a reliable confidential informant about the rental car Holland was currently driving, a state trooper conducted a traffic stop of a vehicle matching the description and partial license-plate number on April 26, 2018, eastbound on the Pennsylvania Turnpike. The driver was identified as Holland, who claimed that he was

13

- driving the rental car to King of Prussia Mall to go shopping for a baby shower.  After the stop, different plainclothes officers followed Holland, who continued east on the Turnpike to the "Reading Interchange," where he turned around and headed west, back toward Harrisburg.  Holland was then seen entering 269 Cumberland Street, exiting the residence a short time later, and then parking his vehicle down the street.  (Id. ¶¶ 15-16).

- This information was relayed to Detective Ishman from Harrisburg City Vice, who was also surveilling Holland.  Detective Ishman stated that he had obtained information that Holland used a "trail car" or "lead car" when traveling to obtain narcotics.  Detective Ishman had heard ~~that Taylor, one of Holland's girlfriends, drove the trail car for him, and~~ that Black, ~~another~~ girlfriend, lived at 504 Cumberland Court Apartments.  (Id. ¶ 17).

- As part of the investigation, information obtained from Enterprise Rent-A-Car indicated that Holland had rented 17 different vehicles between January 2018 and April 2018.  (Id. ¶ 18).

- On June 25, 2018, Officer Johnson communicated to Trooper Panchik that an ex-girlfriend of Holland had informed Officer Johnson that Holland had traveled to New York in a dark Range Rover.  ~~The same ex-girlfriend also verified that Holland was residing at 269 Cumberland Street and had been living there for "the last year."~~  (Id. ¶ 19).

- On July 13, 2018, Trooper Panchik was conducting surveillance on 269 Cumberland Street and observed the vehicle of a known cocaine and marijuana trafficker parked in front of the residence.  (Id. ¶ 20).

- On November 13, 2018, Officer Johnson relayed to Trooper Panchik that he had been contacted by a female who reported that Holland had been selling marijuana for the past year in the Harrisburg area.  (Id. ¶ 21).

- On November 19, 2018, Holland was stopped by a different state trooper and found to be in possession of a small amount of marijuana.  (Id. ¶ 22).

- ~~On March 8, 2019, Black reported to Trooper Panchik that Holland utilizes 269 Cumberland Street as a stash location for marijuana and uses another female associate's residence to keep firearms.  Black also reported that Holland drives a Range Rover and Lexus.  Trooper Panchik averred that, as noted earlier in the affidavit, previous information from cooperators indicated that Black was storing narcotics at her residence for Holland as she was his girlfriend.  Accordingly, Trooper Panchik~~

14

~~believed that Black "would be privileged to this information as she has kept items for Holland in the past."~~ (Id. ¶ 23).

- On March 21, 2019, Trooper Panchik was provided a "Drug tip" from the "tip line" reporting that Holland had access to 269 Cumberland Street, was selling drugs to the tipster's sister, and had been asked numerous times to stop based on overdose concerns. The tipster related that Holland was selling heroin and crack cocaine and was using the caller's sister as a drug runner to move drugs from Harrisburg to Philadelphia in a green Range Rover. The tipster reported that they knew "for a fact" that Holland was staying at 269 Cumberland Street, as they had picked up their sister at this address that same week and had observed Holland at the residence with drugs and money. The caller also provided a Facebook page for Holland, which included a picture of Holland at a restaurant across the street from 269 Cumberland Street with the caption "Every time the pack get gone I get another load." Based on Trooper Panchik's training and experience, a "pack" is used in drug culture to refer to a pound of marijuana. (Id. at ¶ 24).

- Trooper Panchik reviewed "open source intelligence information" indicating that Holland was associated with 269 Cumberland Street. (Id. ¶ 25).

- On April 25, 2019, two inbound parcels addressed to two Harrisburg addresses were seized and searched pursuant to a warrant. The parcels contained 19 pounds of marijuana and had been shipped from California. A controlled delivery operation was conducted for the parcel directed to 1810 Briggs Street. A male retrieved the package and took it into the residence, and law enforcement agents—acting on an anticipatory warrant—entered the residence. ~~"At this time a cooperating defendant related that they could contact the person to who the parcel was destined for. A phone call was made to"~~ Holland, ~~who requested that the cooperating defendant check on the other parcel. Holland instructed the cooperating defendant to place the box on the rear porch as he would come to retrieve it.~~ Approximately 10 minutes later, Holland arrived and took possession of the parcel on the back porch, at which time he was taken into custody. (Id. ¶ 26).

- ~~While speaking with authorities, "the cooperating defendant . . . related that Holland was a friend and [that] they were just at his residence of 269 Cumberland St on April 23, 2019[.] They related that Holland lived at 269 Cumberland St Harrisburg as the cooperator is intimate with HOLLAND and this was confirmed with photographs and videos within the phone.~~

15

~~The cooperator related that they have received numerous packages for Holland in the past and know him to be a marijuana trafficker."~~ (Id. ¶ 27).

- Trooper Panchik averred that, due to his experience and training, he knew that sophisticated drug traffickers utilize various addresses to elude detection and will not keep illicit items at a location known to police. He further averred that it is common for traffickers to ship packages to other people known as "mules," who then contact the trafficker if there has been no police activity and the parcel is "safe for pickup." He believed Holland was a "sophisticated narcotics trafficker" who showed common signs of these activities meant to elude law enforcement, including using his mother's address as his residence for supervised release while also maintaining a different residence for storing contraband. (Id. ¶ 28).

- The nature of the drug-trafficking operation being investigated was similar to other organizations Trooper Panchik had investigated. Trooper Panchik requested "a search warrant to be issued for the residence of 269 Cumberland Street as it is believed to be a stash location" for Holland as confirmed by the information contained in the affidavit. (Id. ¶ 34).

We have no hesitation concluding that the undisturbed portions of the affidavit provide probable cause for a search warrant. There are still numerous, reliable sources of information indicating that Holland was involved with drug trafficking in Harrisburg; extensive connections between Holland and the 269 Cumberland Street residence; multiple links between that address and drug distribution; and a plethora of confirmed details concerning Holland's use of rental vehicles and receipt of drug shipments from the West Coast. Whether applying a *de novo* or "substantial basis" standard of review, there is no question that the reconstructed affidavit establishes probable cause for the April 25 search warrant. Under these circumstances, no Franks hearing is required. See Aviles, 938 F.3d at 509.

## IV. Conclusion

We will deny Holland's motion (Doc. 43) to suppress evidence because he has failed to identify a Fourth Amendment violation.[3]  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    August 25, 2020

---

[3] We will likewise deny Holland's additional request for disclosure of the identity of the confidential informant mentioned in the affidavit of probable cause. Holland seeks disclosure so that he can "determine if the confidential informant also provided known falsehoods which were relied upon in the determination of probable cause." (Doc. 44 at 17). Holland's request falls on the end of the spectrum where an informant is a "mere tipster" whose identity generally need not be disclosed.  See United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981).  Moreover, Holland's basis for disclosure consists of "mere speculation as to the usefulness of the informant's testimony to the defendant," which "is insufficient to justify disclosure of [the informant's] identity." United States v. Bazzano, 712 F.2d 826, 839 (3d Cir. 1983) (*en banc*) (quoting United States v. Estrella, 567 F.2d 1151, 1153 (1st Cir. 1977)).